Good morning, ladies and gentlemen. Our first case for argument is Indiana University against Curry. Good morning, Your Honors. May it please the Court. Indiana's statute prohibiting the acquisition or sale of aborted fetal tissue is not vague because a reasonable person, considering all of the relevant words in context, would understand that it is a crime to either get or not get. Or convey aborted fetal tissue. And everyone agrees that the Indiana University plaintiffs are violating the statute by getting aborted fetal tissue from BDARL. This Court should reverse and enter judgment for the prosecutors. And I do want to begin with the District Court's vagueness holding. As you're well aware, there are hundreds of federal statutes, thousands of state statutes, including those in Indiana, which use the words transfer, acquire, and receive. Before we go further, could I ask you what role the Attorney General's Office has in this case? Well, the Attorney General's Office obviously represents the state of Indiana with respect to statutes. When a prosecutor is sued in a case like this, the litigation binds the Attorney General's Office and all future interpretations of the statute. So although the prosecutors How is that? The prosecutors What I see is a lawyer in private practice representing two public officials whose terms expire this December. Yes. So how do your statements bind future officials in Indiana? Because the state of Indiana has previously construed state prosecutors to be employees of the state. They're actually compensated by the state. They are state officials for purposes of actions like these. So my statements on behalf of those public officials do bind the state, Judge Hamilton. I have a related question, which is what is this case doing here? It looks like one subordinate body in Indiana is suing another subordinate body in Indiana. Why is that justiciable? Well, Judge Easterbrook, that's the very question that this court examined in the city of South Bend case. But this case is quite different. We're going to have to slow down a bit. There's an echo in this room. I don't know whether there's a problem with the microphone or otherwise, but the echo makes things hard to hear. Yeah, let me try to accommodate that. In the South Bend case versus South Bend Common Council, this court held that two agencies of the same city could not sue one another because they are the same body. Two parts of the same state suing one another. Well, what's different about this case, Your Honor, is that Indiana University is a corporate body politic that can sue and be sued independently of the state. That's Indiana Code 2122-2. I don't think Indiana can confer jurisdiction on a federal court. If as a matter of federal law, one part of a state can't sue another, no state law can change that rule. Do you have any case for the proposition that as a matter of federal law, one part of a state can sue another part of a state? Well, as a matter of federal law, my understanding is that if you have two separate juridic persons, they can sue each other. And so when the state of Indiana sets up— And they're both—look, suppose one subsidiary of General Motors sues another subsidiary of General Motors. It's got lots of subsidiaries. Would a court adjudicate that claim? It would not, and here's why this case is— It would not. And here we have one subsidiary of Indiana suing another subsidiary of Indiana. And this is why this case is different, because General Motors does not set up a subsidiary as a separate juridic person. Yes, it is. That's what it means to be a subsidiary rather than a division. If I could continue— Subsidiary is separately incorporated. It is a juridical person. There's no doubt about that. Right, but if I could continue, Indiana statutes make clear that Indiana University has the power to accept and receive gifts that are not part of the appropriation— That's the proposition that state law cannot confer federal jurisdiction. But state law can— You can't just say, well, as a matter of federal law, one part of a state can't sue another, but we in Indiana disagree with that, so that's canceled. This has to be decided as a matter of federal law. Certainly, but Indiana has the power under state law to create a separate juridic person, which I believe Indiana has done here, not only with respect to the power to accept gifts— You have to answer the General Motors question the other way and say that because each subsidiary is indeed separately incorporated and can sue and be sued, they can sue each other even though they're both controlled by the same board of directors, directly or indirectly. Yes, well, Judge Easterbrook— Your Honor, I respectfully disagree, and I'm sure Indiana University's counsel, as the counsel of the separate juridic person, will be able to provide even more information on that point than I will. From our perspective, the only justiciable problem is the lack of rightness with respect to their challenges to the vagueness of the transfer, acquire, and receive language, and the any other part language, because there's no threat of prosecution. Counsel, this is a criminal statute, correct? Correct. And there are individual plaintiffs? Yes, there are. And you believe at least one of them is conducting his research in such a way that it violates the statute, correct? On a prospective basis, that's correct, Judge Hamilton. Okay. So turning to the vagueness, these words are not vague in context, particularly in light of four principles. First, under the associated words canon, you have to read the words transfer, acquire, and receive together with the word sell, and together they require some change in ownership or a change in title. Mere movement is not enough. I don't understand how you get that. Let me just tell you where I'm coming from. We have lots of federal statutes, for example, that deal with different forms of contraband. Yes. Suppose we're not talking about tissues, but we're talking about cocaine. Yes. Does transfer or distribution require a change in ownership or a lease or some sort of possessory interest of the kind you're discussing? Well, typically the federal statutes and most state statutes regarding a prohibited drug like cocaine would prohibit mere possession. But take your hypothetical. Imagine you had a federal statute. I'm not asking about it. I'm talking about changes of possession, a transfer, a conveyance, a distribution. So imagine you had a federal statute that expressly prohibited the transfer of cocaine. A reasonable person. We do. Okay. Terrific. Then take that statute. A reasonable person would not construe transfer in that context as committing a separate, chargeable violation when you move the cocaine from one side of the table to the other, when you put it in your pocket. You hand it to your colleague in the packaging room. That's a federal crime. Your theory about conveyance and possession and ownership seems to introduce a kind of copper-weld antitrust notion for excluding intracorporate conspiracies. But this is a criminal statute drafted to prohibit transfers. So I don't understand how you can say that having two people that in other contexts we would call co-conspirators transfer possession from one to the other is not a crime. Well, certainly if you had a co-conspirator here who knowingly assisted Dr. Lahiri and the university in acquiring. Right. And if they acquire. Why is it important for you to offer this limitation? That's one thing that I've had a hard time figuring out. You seem to want to emphasize in your brief, if I've read it correctly, that transfer does not apply to an exchange or a transfer from one lab assistant to another. Mayor Movement, that's correct, Judge Scudery. Why? Because we don't think that a reasonable person would understand the statute, for example, to result in criminal liability for FedEx if knowing the contents of the package drove the substance into Indiana. Are you calling that limitation as a savings construction? No, that was just the prosecutor's construction. Now, if this court were to disagree and conclude that the statute is not vague because it includes Mayor Movement, we went on that basis too. It's still not vague. If you're telling us on its plain language it does include this limitation, right? What I'm saying, if it clearly does, then we still win because it's not vague. Really, the way I see it, the court has three options. You can agree with us that the statute is not constitutionally vague or that it's merely ambiguous, which is not unconstitutional, and you can rule in our favor. You could alternatively be concerned about vagueness in the context of the hypothetical. I have Judge Scudder's question, which I don't think he's satisfactorily answered. Why does it matter to the federal constitution what the correct meaning of transfer or any of these other words is, given that Indiana has a judiciary that can resolve those kinds of disputes? Well, the claims here are federal constitutional claims. I understand that. The word transfer exists in federal statutes, as Judge Hamilton pointed out. It does indeed. No one has declared that word unconstitutional. Correct. Instead, we have a federal judiciary, us, who interpret the meaning of that word. Yes. Part of the problem in that case is that both sides seem to assume that whenever there's a need for a judiciary to interpret ambiguities in legal words, those words must be unconstitutional. Well, if so, we're all out of jobs because every time somebody brings an ambiguity to us, the only thing we would do is declare the statute unconstitutional, and that's not the way adjudication works. So why are both sides making this assumption? Maybe you stated it better than I did, Judge Easterbrook. The point I was trying to make was the difference between vagueness on the one hand and ambiguity on the other. I will say I find that about the most ambiguously vague distinction one can imagine. Please let me explain. If you have a federal statute that prohibits the use of offensive speech and no one can understand what it means, that's the type of vagueness that is required to strike something down as unconstitutional. When a term is merely ambiguous, which is their contention here, then this court or a state court doesn't do anything at this stage. Instead, you wait for an actual prosecution or an as-applied challenge, and then you let the parties argue about ambiguity in front of the trial court judge, and you let it be decided in the context of that as-applied challenge. They're asking you— And the penalty for a Category 5 felony is what? I'm sorry, an appelli— The punishment for a Category 5 felony in Indiana, which this is, is what? Several—a term in prison, Your Honor. Could you be more specific? I cannot tell you the number of years. I believe the maximum is six years. That sounds correct. So the doctors in Indiana, the university labs, would have to risk a six-year prison sentence. And how many specific violations could occur in research? Well, based on our interpretation of the statute, he's violating the statute approximately four to five times per year. Now, if the prosecutors had threatened prosecution— What is the—is there any litigation in state court as Indiana University or any of its employees brought a declaratory judgment action in state court? That's a fairly common means of dealing with ambiguity at the border of legal words. You say, I would like to do X. I'm worried that if I do X, they'll prosecute me. I would like a declaratory judgment that I can do X. Any such cases filed? Not that I'm aware of. The one case that I am aware of is the Sendak v. Trustees case. It's an Indiana Supreme Court decision from 1970, which did recognize that Indiana University is a separate corporate body of politic that can sue and be sued. It doesn't have anything to do with my question. It does not address the declaratory judgment question. I am not aware of any cases where Indiana University or any other public university of the state has filed such a deck action in state court, Your Honor. So to get back to the choices here, if you conclude that the statute is either unambiguous, as we contend it is, or ambiguous, the way Indiana University does, neither one of those results in what the district court did, which is striking down words of the statute. Mere ambiguity is something, as Judge Easterbrook and Judge Scudder and Judge Hamilton have all pointed out, would be worked out in the course of an ordinary criminal proceeding. It's not appropriate for a facial challenge based on unconstitutional vagueness. If you think that there might be ambiguity or vagueness in the hypothetical circumstances they raise, mere movement around the lab, then uphold it as a facial matter and send them back so that in the event the prosecutors change their minds and decide to initiate a prosecution in those circumstances, which they have said they will not, then it can be worked out as part of the regular proceeding, just as Judge Easterbrook indicated. That's an awfully high risk to run for Dr. Lahiri, right? Certainly not when the prosecutors have affirmatively disclaimed that they would prosecute him for mere movement. Are you bound by that? I think we are bound by that. Are there successors? That's probably less certain, Your Honor. But in this circuit, as in every other circuit, until there's a credible threat of prosecution, not a mere possibility that in the future some different prosecutor might prosecute, but until there's a threat of prosecution, the federal courts don't have jurisdiction. What is the law in Indiana with respect to advice of counsel defenses? That is, if the professors go to the general counsel of Indiana University and get a legal opinion, under what circumstances is that binding? I don't think that would be binding. I think a mistake of law— I'm not asking whether you think something. I'm asking what the state of the law in Indiana is. I don't have specific knowledge. Which you don't know. I don't know the answer to that. But generally, mistake of law— It's better that I don't think off the top of my head something. Judge Easterbrook, I don't believe that a mistake of law in Indiana or any other jurisdiction would be a defense. But I don't have specific knowledge of Indiana law in that area. So to get back to your choices, you agree with us that it's not vague or it's at most ambiguous, the statutes upheld. You agree with them that there might be concern about vagueness in a context where the prosecutors have never threatened prosecution. You say, come back to us with an as-applied challenge if that prosecution is threatened. Or the third thing, if you want to address the hypothetical prosecution, which has never happened and never been threatened, you don't blue-pencil words out of the statute, as did the district court. You simply enjoin the prosecutors from prosecuting for mere movement, which Judge Hamilton resolves your concern about the six years of prison times four or five times per year. That's something that the prosecutors would readily agree to. But what the district court did is the one thing that it couldn't do, which was to rewrite the statute entirely by blue-penciling out the conduct that— Sort of like what the Supreme Court did in Johnson. No, it's not like what the Supreme Court did in— Delete that clause. In Johnson. Right, but here— That was the remedy. That was the remedy in Johnson. The reason why this case is different is because the conduct that they're complaining about is not general conduct. It's very specific. It's on the edges of the statute. The core conduct prohibited by the statute, even IU acknowledges they're engaged in. It's the acquisition and receipt of aborted fetal tissue from BDRL. So this isn't like Johnson. Could you address the concerns expressed by Justice Gorsuch in his concurrence in the DiMaia case, specifically where he talks about the adoption of new laws restricting liberty is supposed to be a hard business by debate among elected representatives and allowing the legislature to hand off the job of lawmaking risks to a handful of unelected judges and prosecutors, in essence, leaves us all at their mercy. Indiana agrees with that general principle. We don't think it applies here because a reasonable person would understand that transfer does not include mere movement. Well, I think I'm a reasonable person, and I know how we apply similar statutory language to other forms of contraband, and your position seems to be unique. The only specific citation you provided to support your reading was, I believe, a 1976 New Jersey trial court decision. Am I correct? That was the one statute we could find that used all of the words in this statute. That's correct. And then, well. Can I give you another example? I don't know why you are saying that a transfer from one member of Dr. Lahiri's lab to another or a movement of the tissue from Bloomington to Indianapolis or to Kokomo is not a transfer. In reading your position and hearing it, it seems to me that you're worried about the statute somehow overreaching. And what I'm trying to figure out, is that a constitutional worry or more of a practical worry? You know, what is it about a transfer from one member of a lab to another that gives you pause? Because those transfers happen potentially hundreds of times in a day. So what? And we don't believe that the intent of the Indiana legislature was to make each one of those transfers a separate chargeable offense. Just like with Congress, when it enacted the law that prohibits the transfer of false identification. So a teenager gets a false ID. We don't believe that they intended to imply that when they move it from the dresser to their pocket, when they take it from their pocket to the retail clerk and present it to buy alcohol, when they give it to their friends so they can see it and they give it back, that each one of those is a separate chargeable offense. Now, if you disagree with us. Prosecutions for felons in possession of firearms? I didn't hear the beginning of that question. Are you familiar with how federal law is interpreted to possession of firearms by felons? On a general basis, yes. Holding it for a second is enough to send somebody to prison for 10 years. Correct. And the difference, Your Honor, is that that statute includes the word possession. This one does not. If I could, I'd like to reserve the balance of my time. I'd actually like to follow up on a couple of the commerce-related questions about your interpretation of the law before you sit down. Yes. Is it correct that under your interpretation of the law, Dr. Lahiri could send an assistant to Chicago to pick up a delivery from the University of Washington lab, and that assistant could then drive it back to Indiana, so there's been no transfer, conveyance, or acquisition in Indiana, and then he and the research team could do research on it in Indiana? That is not our position, Judge Hamilton. Why not? Because if the order is placed or directed to be placed from a location in Indiana and funds for that transaction flow from Indiana University in Indiana, then part of the criminal conduct has taken place in Indiana. Okay. So he sends somebody across the Illinois state line to make the phone call to place the order. If someone at Indiana University in Indiana has directed that the order be placed, a portion of the criminal conduct has taken place in Indiana. Interesting. Okay. Also, what if the University of Washington laboratory decided itself to do the first two or five or ten generations of cell division from tissue and then sent those cell cultures to Indiana? The prosecutors have taken the position that derivative cell lines are not any other part of an aborted fetus, and so that would not be prosecutable. And with your permission, I would like to reserve the balance of my time. Thank you. Thank you, Mr. Bursch. Mr. Chin. Thank you, Your Honor. May it please the Court. The Indiana statute at issue here criminalizes activities that are central to research that's facilitated by the federal government, by federal statute, and funded by the National Institutes of Health. The statute bans, though, acquisition and transfer of what even the prosecutors here concede is legitimate. Why is this case in federal court? Why isn't this a suit in state court? Excuse me. Seeking a declaratory judgment that the university and its faculty can do the things they say they want to do. I'd say a couple of things, Your Honor. It could be a suit on declaratory judgment in state court, but it's properly before this court for the following reasons. You mentioned, I think in your questioning to Mr. Bursch, or there was a discussion about the South Bend case, for example, and my understanding of the South Bend case was that based on Indiana law. I'm not worried about the South Bend case, and actually I was not asking about justiciability. I will get to that. I'm asking why, if there is ambiguity in a state law, the right thing to do is not to file a declaratory judgment action saying we would like to do X, this law is ambiguous, we fear prosecution, please tell us that we're entitled to do X. That's the standard means of getting a question about the meaning of a criminal statute resolved without anybody's risking going to jail. Why isn't that being done here? I agree that it's an available thing. What you described, Judge Easterbrook, is an available thing to do. I think it's also an available thing to do. Could you answer my question, please? I ask why. Why you didn't do that? Yes. Why federal constitutional adjudication should be preferred over the normal process of construing a state law? I'm not sure that it should. We normally say that resolving constitutional questions is a matter of last resort. Judge Hamilton referred to the Johnson case where the Supreme Court held the residual clause of the Armed Career Criminal Act unconstitutional, and it was terribly important to the court's opinion that they had been wrestling with that statute for 20 years, had tried very hard to resolve the ambiguities in it, and finally concluded that they couldn't. But the way you start is by trying to wrestle with the ambiguities. You don't start with the Constitution. You start with interpretation. You decided to start with the Constitution. And I suppose the other way of phrasing my question is why should we indulge that rather than telling you to go ask the state judiciary to disambiguate this statute? I suspect, Your Honor, that had this been a statute that only applied to civil conduct and the main question were about, in fact, the interpretations of that statute that could, you're quite correct, could be enjoyed in a state court on a declaratory judgment action, that IU could have and perhaps would have done that. This is a criminal statute that, as Judge Hamilton pointed out, employs, it could impose up to six years of criminal liability for these. I'm not aware of that. Is there some, you know, I thought you might say Indiana courts don't entertain such actions. And if they would refuse to entertain such actions, that would be a mark in your favor. That would be an answer to my why question. Do you think they would refuse to entertain such actions? I have no reason to think that a state court wouldn't entertain a declaratory judgment action of the type that you described. But the question before this court from the district court's judgment is whether this statute at issue is not only ambiguous but so profoundly ambiguous. Well, now I will ask my justiciability question, which is what is this case? Is it permissible for this case to be in federal court? Can Indiana say, well, it's fine by us for one part of the state to sue another part of the state. Therefore, you federal judges get jurisdiction. Certainly, we can't confer jurisdiction on a federal court. That is clear. When I was mentioning the South Bend case, my understanding of it was that for purposes of Indiana law, as I understand it, this court held that the city common council and the city executive were not sufficiently distinct things under Indiana law. I must say, I did not ask anything about the South Bend case. That deals with municipalities. I'm asking a general question about justiciability. Now, I thought you might answer this by referring to United States against Nixon, where a special prosecutor in the name of the United States was allowed to subpoena the president of the United States. And the justices had some reason for thinking that that was an exception to the norm that one part of a governmental body can't sue another. But I haven't heard, well, neither side has mentioned Nixon. This is not about South Bend. This is about justiciability law as understood by the Supreme Court of the United States. Well, Your Honor, I would say that that turns on the facts of what Indiana University is vis-a-vis the state. If Indiana University is the state for purposes of your hypothetical, then we may have a problem. And Indiana University always tells us that it is the state when it invokes the 11th Amendment. When somebody sues Indiana University, it raises a 10 and says, we are the state of Indiana. You can't sue us in federal court. And I want to know why they aren't the state of Indiana now. Well, they're not the state of Indiana now because they are indeed created by the General Assembly, but they have a separate board of trustees, a mix of public and private money. And constantly declining state money, right? Not declining it, no, Your Honor. That's a proportion of its overall expenditure. Yeah. Look, if Indiana University were willing to be consistent, if it were willing to say, no, we're not the state when somebody sues us, we don't have any 11th Amendment immunity, that would alleviate my problem. But Indiana University is talking out of both sides of its mouth. It is the state when somebody sues it. It's not the state when it brings a suit by itself. And it seems to me that's very hard for both of those things to be true at once. Well, let me say something I hope is more convincing about that topic, which is even if, so even if Indiana University is the state for purposes of justiciability inquiries by the court, each one of the five claims that the IU plaintiffs asserted in this case, including the ones that are before this court and the district court's judgment itself, was brought by individual human plaintiffs as well. So if the court deems that IU is not a proper plaintiff in this case, there are proper individual plaintiffs, and I believe the analysis goes forward on that basis. And the court is not wanting for a justiciable question before it. I want to spend some time on the vagueness inquiry that each of your honors had questions for Mr. Bursch about. I think it seems clear from the various positions taken by the state throughout this litigation, including in its briefs on appeal, that we have something of a complicated user manual for the IU plaintiffs to follow in understanding how to conform their conduct. They say, for example, the prosecutors do, that it's obvious that the transfer of aborted fetal tissue is only unlawful if there's a transfer of possession and ownership, at least vis-a-vis that intra-university or intra-lab transfers. They say they double down on that proposition, I think, by saying when you look at the most important verbs in this statute in the series— Your reading is a plain and clear reading of it that this limitation that they put upon or insist upon with transfers from one member of the department to another just doesn't hold water. Where do you go from there? I mean that doesn't prove vagueness. Well— I mean, in all, right? We agree with you that the transfer from one lab employee to another is a transfer. It's a problem under the statute. How does that help you, though? So, a couple of things. First, and I believe Mr. Bursch has said at least to some extent, his comments and the comments in the briefs from the prosecutors are able to bind the state at least to some extent. So we have a variety of statements and applications from the prosecutors about how this law applies, the intra-lab and intra-state transfers being just one of those. So the question is, even if the intra-lab transfers are deemed to be a crime, which we certainly hope as a practical matter that they're not, the prosecutors have told you that's not the intent of the General Assembly. Their obligation is to match up the words of the statute in a way that confers not vague and not—in terms that are not subject to arbitrary enforcement by prosecutors, including defendants like them. Would there be a constitutional problem with the enforcement of the statute in a circumstance where one member of the lab transfers it to another? Probably not in itself. Certainly we have pleaded additional constitutional theories beyond vagueness under due process grounds, but I don't know that the single act of the intra-lab transfer itself in isolation implicates another constitutional theory that we have. But here's what we know from the prosecutors as the case has been fleshed out. Transfers within the lab at IU are okay. Transfers to other IU campuses apparently are okay. Transfers to the National Institutes of Health under the terms of the grants that fund this research is a crime, even if it's just possession that's being transferred. Transfers of cellular— You're just causing me to ask my question again. Maybe I should just give up. Why isn't the state judiciary the right way to answer this? It seems clear to me, as I think to my colleagues, that the lawyer for the prosecutor can't answer this on behalf of the state, and we can't because we're not state judges. But state judges can. The state judiciary of Indiana can give authoritative answers to all of these problems. And if they are willing to entertain declaratory judgment suits, they can give answers to these problems without anybody risking criminal liability. So why isn't that the right place to go? Judge Easterbrook, I have no better answer than it is a proper place to go. I hope this court determines that it has— Going back to my observation that constitutional adjudication is supposed to be a matter of last resort, and nobody's pursued the matters of first resort. Are you by any chance acquainted with the case of Parker v. Levy?  Parker v. Levy. I'm not. It's a wonderful case. There's a clause in the Uniform Code of Military Justice that says that it is a crime, a court-martial offense, punishable by years and years in prison, to engage in conduct unbecoming an officer and a gentleman. Who could know what that is? That's attacked as unconstitutionally vague, and the Supreme Court says no. There's no constitutional problem with it because the military hierarchy, through regulations or adjudication, can disambiguate it. One would think that Parker is conclusive in a case like this. As long as the state is available to disambiguate the problems, right? But no one's talked about Parker. Think about the Hatch Act. There are terms of great ambiguity in the Hatch Act, and they impinge on First Amendment rights. The Supreme Court said in civil service commission against letter carriers that the right way to deal with that is to file declaratory judgment actions and not to hold the ambiguous terms unconstitutional. And I just don't understand why we shouldn't be following the decisions of the Supreme Court, which are telling us to tell the litigants, go ask the state judiciary. Well, Your Honor, the state of Indiana, at least by and through the prosecutors in this case who are state officials and enjoy a defense by the attorney general, as Mr. Bursch said, have appeared in this litigation, have not argued abstention, justiciability, or particularly jurisdictional grounds. It's a question of abstention. My point is that they haven't argued any ground other than that they are here in federal court to explain what the statute means. Now, of course, their view is the statute is— But they can't. They cannot authoritatively determine the meaning of the statute. Only the state judiciary can do that. That's just a matter of black letter law. Your Honor, just one more, Your Honors. Can I ask about your dormant commerce clause argument? I don't mean to shift you over there, but I'd like to hear what you have to say on that. You know, you allege that Indiana law effectively erects a wall around the state or a wall at the border and prohibits fetal tissue from entering or exiting the state. I got to tell you, I really have a hard time seeing how this has any interstate effect at all. If the Washington lab wanted to ship something to Ohio State, the FedEx truck can move right on through the state of Indiana without any trouble whatsoever. So I really have a hard time seeing how you get interstate effect out of this statute. Well, a few things, Your Honor. First, to the extent that—and I'll suggest that we analyze that question under pike balancing, for example. I think strict scrutiny might apply, but let's say that pike applies. The plaintiffs have alleged no local putative benefit whatsoever. But as against that, including all of the things that focus on our transfer and acquisition questions, the record is clear that aborted fetal tissue is a legitimate article of commerce, not contraband. They concede that on appeal. State and federal informed consents that they've said in some other context they're worried about are in fact in place under state and federal law in Washington, and those are delivered in Washington, separately for the abortion and the tissue donation decision. The tissue is derived from a constitutionally protected activity that occurs in Washington. Federal regulations already make and forbid the paying of consideration for the thing that's at issue here. There's no issue about creating a market. BDRL is a certified NIH laboratory. And the acquisition and subsequent transfer of the fetal tissue that the defendants challenge is in connection with research that's part of national and, in fact, global efforts to fund life-saving research for the most troublesome diseases in our country. All of that conduct and all of that context exists in the transaction, first between the Birth Defects Research Laboratory in Seattle, Washington, and Indiana University in the first instance, and then the transfer of fetal tissue outside of Indiana, for example, to the National Institutes of Health outside of Indiana. Where the state is telling us, in another context, we can do all the research we want in Indiana on that tissue. So that the state's interest is not, in fact, regulating the actual research in Indiana, although curiously they say that the principal ground, the principal justification for the statute that informs how to interpret it and how to apply it is so-called research ethics. By which they really mean labeling aborted fetal tissue something that's itself unethical. And in a circular way, saying the tissue is unethical, therefore it is unlawful to use. None of that demonstrates anything about a putative local interest that can be fairly weighed as anything but overcome by excessive interstate regulation. That's our basic view of how the Commerce Clause applies here. Mr. Chen, the Indiana University and the plaintiffs have said, in essence, they're not satisfied with the district judge's remedy because you've cross-appealed. What additional relief are you seeking? And if I'll just venture the comment, I gather a lot of this is just about trying to decide whether Dr. Lahiri and his team are sufficiently comfortable to continue doing their research in Indiana. To that last point, Your Honor, I think that's fair. Obviously, because this is a criminal sanction, nobody in Dr. Lahiri's lab or Dr. Lahiri himself wants to be on pins and needles about whether any of the activities that we've discussed today, including the transfers, the acquisitions, the receipt, the sort of most meaningful terms of the statute, render them subject to criminal liability. So I think that is the main thing that they are concerned with. Why is the district judge's remedy insufficient for your purposes? So I'd say two things specifically. For most purposes, it probably is sufficient, in fairness, Your Honor. Obviously, the district court's judgment struck three of the four verbs in the statute and struck the phrase, any other part. To the extent that we can rely on that judgment, of course, we probably get no relief from our other theories other than in each of those theories, the statute would be struck as a whole. In other words, there's no limiting construction by the court that's at issue in those other circumstances. It's a striking of the statute as a whole. So it provides at least nominal additional relief. Secondly, to the extent that that's not much additional relief, obviously all five of the issues are fully briefed before this court on appeal, and we'd hope that you take cognizance of them in deciding whether or not the district judge's opinion can be affirmed on other grounds. The final point, Your Honors, that I'd like to make is to summarize what Dr. Lahiri and his colleagues and, in fact, the other researchers at the university face if the statute doesn't remain enjoined. And I'd first like to comment that I understood Mr. Bursch in answer to a question to suggest that the so-called Illinois hypothetical, the idea of driving to Illinois to pick up the fetal tissue and driving it back into Indiana, which was discussed both below and in the papers on this court, that he's backed away from endorsing that as a proper construction of the statute. He's certainly entitled to have that, of course, be his view before the court, but I would note that in the response of the prosecutors at page 17, at least to our mind, they seem to have endorsed that view at least insofar as crediting the district court for observing that that was a construction of the statute in another part of her opinion, in her Dormant Commerce Clause analysis. And so we had understood that they did, in fact, believe that that was a proper way to construe the statute. And, of course, if it is, if they resort to that and if that view is in any way binding on the state because of its positions in this litigation, then we fail to see the principal distinction between obtaining fetal tissue in Illinois and driving it back to Indiana, and obtaining it, which is, after all, what we do. We acquire it, right? Acquire title, ownership, and other sufficient interest to it in Seattle and having it shipped to Indiana. So we think that's a lack of a principal distinction that matters. And let me go one step further in terms of something that matters quite factually to the university. In understanding whether ownership and possession, as the prosecutors sometimes say is required, really applies in Indiana, imagine that we are transferring tissue from Indianapolis to Bloomington, but we give it to a third-party carrier to do that. Have we committed a crime by transferring that to the third-party carrier? I'm sorry to say this, but Indiana has a very large judiciary, which would be happy to answer that question. I understand, Your Honor. They have to earn their living somehow. Fair enough. To the extent that this court decides to answer that question, I would simply say – Oh, by the way, I forgot to ask earlier. What opinion has the general counsel of Indiana University given about these questions? Well, I don't know that – obviously, I'm in touch with the general counsel for Indiana University, Your Honor, and she's our client representative, but I'm not sure the context of me being able to disclose what she has said to me. Well, you can assert an attorney-client privilege. There's no doubt about that. But can you – unlike the prosecutor who disclaimed any knowledge of Indiana law about advice of counsel defenses, what do you think Indiana law provides about advice of counsel defenses? Well, I'm going to be quite straightforward and say, Your Honor, I don't know what the advice of counsel defense is, certainly not in this context. The only thing I'll add – I'll tell you what federal law is. There are an awful lot of federal statutes that have at least one intent element. And advice of counsel, if obtained honestly and followed scrupulously, defeats the intent component of any federal criminal law. And one might think it would have the same effect in Indiana, but since neither side knows, we'll go find out. Well, I certainly don't know, Your Honor, but I would be happy to know. I would remind them in the course of the litigation to that representation that way to defeat the mens rea element of the statute. But that doesn't appear that it's occurred. Well, what I hope – whether or not the advice of – I think this challenge is broader than that. You're not worried just about transfers within the department. No, of course not. Yes, any transfer of any type is of concern to us, Your Honor. And just to say one final word about the advice of counsel defense. Obviously I hope that it's available to my clients in a way that makes sense. My other hope is that they don't have to suffer a prosecution, especially one based on this vague statute, in order to know whether it does. Thank you, Your Honors. Thank you, Mr. Chin. Anything further, Mr. Burke? Very briefly, Judge Easterbrook. Judge Scudder, you asked Mr. Chin if Indiana University's reading of the statute is plain and mere movement is included, are there any additional constitutional problems? And his answer to that was no, and that's because there is at most a mere ambiguity in the statute. And, Judge Easterbrook, you're exactly right. That's what puts this case straight into Parker v. Levy. There's no constitutional problem with ambiguity, and we leave that to the multitude of state court judges to work out. And we're aware of no authority that would prevent Indiana state court judges from resolving those ambiguities that they raise as they arise. A couple of other brief points. Mr. Chin went on at length about pike balancing, but as this court makes clear in its park pet or pet park decision, you don't even get to pike balancing unless you can demonstrate that the state indirectly is benefiting in-state economic interests versus out-state interests, and we simply don't have that here. As for the advice of counsel defense, Judge Easterbrook, I don't think that really makes a difference as to ambiguity and the remedy that you proposed is correct. And then finally, with the district court striking out numerous terms in the statute and Mr. Chin's argument that that was appropriate remedy, that's clearly incorrect, because if the statute is at most ambiguous, this court's obligation is to uphold it on a facial challenge and allow the state court judges in Indiana to work out those ambiguities. Unless you have any further questions, I'm happy to cede the balance of my time. Thank you very much. Thank you. The case is taken under advisement.